J. M. EVERETT v. JAS. S. GOODWIN AND STARMOUNT GOLF CLUB, INCORPORATED.

(Filed 2 December, 1931.)

1. **Golf A a—Evidence of golfer's negligence in driving ball from tee held sufficient to be submitted to the jury.**

A player upon a golf course must exercise ordinary care commensurate upon the surrounding circumstances at the time, particularly in driving the ball, and where there is evidence that the defendant, playing in a threesome behind a twosome in which the plaintiff was playing, failed to give any warning by shouting "fore" or otherwise, and that he drove the ball while the plaintiff was shortly in front of him on the fairway in violation of a rule of the club that a player should be allowed two drives before following players should proceed, with evidence in contra-

diction and evidence that the twosome and threesome had merged into one game, *Held:* the conflicting evidence was properly submitted to the jury upon the issue of the defendant's negligence.

**2. Golf B a—Evidence that golf club failed to exercise due diligence in enforcing rules held sufficient to be submitted to the jury.**

The owners of golf courses for hire are obligated by law to promulgate reasonable rules for the protection of persons who are rightfully on the course, and to exercise due care for the enforcement of the rules, and where a golf club has adopted, for the safety of players, rules regulating the distance to be observed between successive players upon the course, and has supplied "rangers" to enforce the rules, and there is evidence that the rules were continuously violated by a player in playing a threesome behind a twosome in which the plaintiff was playing, and that the "rangers" made no attempt to enforce the rules, if they saw their violation, and that the plaintiff was injured as a result of the violation of the rules, *Held:* in an action against the golf club the evidence was properly submitted to the jury on the question of the club's negligent failure to enforce the rules.

CIVIL ACTION, before *Finley, J.,* at May Term, 1931, of GUILFORD.

This is an action to recover damages for personal injury as a result of being struck by a golf ball driven by the defendant Goodwin upon the golf course of defendant Starmount Golf Club, Incorporated.

The following issues were submitted to the jury:

1. "Was the plaintiff injured by the negligence of defendant, James S. Goodwin, as alleged in the complaint?"

2. "If so, was such negligence of the defendant, Goodwin, wanton and wilful, as alleged in the complaint?"

3. "Was the plaintiff injured by the negligence of the defendant, Starmount Golf Club, Incorporated, as alleged in the complaint?"

4. "Did the plaintiff, Everett, by his own negligence contribute to his own injury, as alleged in the answer?"

5. "What damage, if any, is the plaintiff entitled to recover of the defendants?"

The evidence introduced upon the issues submitted was substantially as follows:

On Sunday, 3 August, 1930, the plaintiff and a companion named C. W. Elkins went to the golf course of defendant, Starmount Golf Club, in order to engage in a game of golf. A fee of one dollar for each player was charged by the defendant, Golf Club, and paid by plaintiff and his companion. The plaintiff and his companion, playing what is called a twosome, began their game and before they had proceeded very far the defendant, Goodwin, with two companions, named Land and Fagan, came upon the course and began playing a threesome behind the plaintiff. Plaintiff testified as follows: "As we were starting

on the fifth hole I drove, and Mr. Elkins then drove, and I got a bad drive on my first ball, which did not go any further than from here to the door back there, and I went out and was preparing to drive again and as I did I looked around and Mr. Goodwin was getting ready to drive his ball off and was swinging, and I hollered, 'Look out, don't drive this way,' and as he drove, the ball went over my head and he hollered and said, 'Get out of the way.' " Plaintiff further testified that the defendant and his companions were driving balls in and about him and his companion from the fifth hole up to the fourteenth. The occurrence at the fourteenth hole is narrated by the plaintiff as follows: "They were right there on the tee with us when we finished, and as soon as we would put our ball down and drive off before we had gone more than fifty feet they would have their ball down starting to drive it without any warning whatsoever. In fact, they were so close to us that we did not walk down the middle of the fairway for fear they would hit us. They would drive just immediately after we drove our ball. . . . As we reached the sixteenth tee and Mr. Elkins made his drive, and I made my drive, as I stepped off, a couple of them, I do not know just which it was that had the ball already teed up ready to swat it, I walked over the edge of the fairway in the rough and I had not gone more than fifteen feet when they had driven their ball and Mr. Goodwin put his ball up to drive and he was drawing back to hit it, and I made the remark, 'You are liable to hit me.' I made it loud enough for all to hear. I said, 'Better get out of the way, he is liable to hit us,' and I got off the fairway on the edge of the rough and when I did he drove the ball and the ball hit me on this knee-cap and as it hit me on the knee it knocked me off both feet on the ground and I immediately got up as quick as I could and I said, 'I believe it broke my leg.' Mr. Goodwin walked down there and said he didn't think it was broken and didn't think it was hurt much."

There was ample evidence that the plaintiff sustained a serious injury. There was also evidence that the defendant, Golf Club, had promulgated certain rules to the effect that the players first using the course and beginning a game, are entitled "to have two drives" before the succeeding match or players are permitted to tee off.

The evidence further disclosed that the defendant, Starmount Golf Club, employed rangers for the protection of players, who are charged with the duty of enforcing the rules of the game so as to prevent one group of players from driving into the group ahead. However, the evidence of plaintiff tended to show that the rangers were not present at the time of his injury, or, if present, they made no protest and failed to enforce the rules of safety prescribed by the defendant Golf Club.

The defendant offered evidence tending to show that there was a merger of plaintiff's twosome and the defendant's threesome, making a fivesome, and that all of the parties were playing together in the same game at the time of plaintiff's injury. The defendant further offered testimony to the effect that he cried "fore" at the time he drove the ball that injured the plaintiff. The testimony further shows that a golf ball travels at a high speed and that it is practically impossible to dodge it when in rapid motion.

The jury answered the issues in favor of the plaintiff and awarded damages in the sum of $500.

From judgment upon the verdict both defendants appealed.

*Younce & Younce for plaintiff.*
*Sapp & Sapp and Brooks, Parker, Smith & Wharton for defendants.*

BROGDEN, J. 1. What duty does one golf player owe another in playing the game?
2. What duty does the owner of a golf club owe to its patrons paying a fee for the privilege of using the course?
A writer in Law Notes of November, 1931, says: "Serious accidents resulting from the playing of the Royal and Ancient Game of Golf have been infrequent—that is, if one is to judge from the paucity of authority on the subject. Nevertheless, the few reported cases involving actions of this nature emphasize the fact that there are legal as well as other hazards incidental to the game. The courts are generally in accord on the point that a golfer, when making a shot, must give a timely and adequate warning to any persons in the general direction of his drive." The only decided cases, squarely in point, which the writer has been able to find are as follows: *Toohey v. Webster,* 117 Atlantic, 838, 23 A. L. R., 440; *Biskup v. Hoffman,* 287 S. W., 865; *Schlenger v. Weinberg,* 150 Atlantic, 434, 69 A. L. R., 738. All the foregoing cases are referred to in the issue of Law Notes, *supra,* and also, in 69 A. L. R., 740.

Certain general principles of law are stated in the opinions referred to. For instance, in the *Weinberg case, supra,* the Court said: "A golf course is not usually considered a dangerous place, nor the playing of golf a hazardous undertaking. It is a matter of common knowledge that players are expected not to drive their balls without giving warning when within hitting distance of persons in the field of play, and that countless persons traverse golf courses the world over in reliance on that very general expectation."

In the *Toohey case, supra,* the defendant testified that he called "fore" before striking the ball. There was other testimony to the effect that

24—201

no such warning was given, and, if any at all, it was too late to be effective. The Court said: "This raised an issue of fact as to whether adequate and timely warning was given to the plaintiff, and, therefore, the question of defendant's negligence was properly left to the jury."

The dominating idea bearing upon the subject is that a player upon a golf course must exercise ordinary care in playing the game, and particularly in driving the ball. Of course, the duty to exercise ordinary care is dependent upon the surrounding facts and circumstances of the given case. The evidence tends to show that a golf ball when driven, travels at high speed and is not easily avoided. So that a person of ordinary prudence would reasonably anticipate that injury would probably result to others within the range of the drive.

In the case at bar, the plaintiff was rightfully upon the course, and the defendant Goodwin was fully apprised of his presence. The record discloses that rules of safety were promulgated by the corporate owner of the golf course to the effect that the front match should be allowed at least two drives by the match immediately following, so as to eliminate the probability of being struck by a driven ball. The evidence further tended to show that the defendant was violating this rule of safety. There was also evidence that the defendant gave no warning to plaintiff at the time of making the drive. However, there was positive testimony offered in behalf of defendant that proper warning was given. Hence the question of warning was properly submitted to the jury.

There was evidence tending to show that the match played by plaintiff and his companion, and the match played by the defendant and his companions merged and became one game. This, however, is denied by the plaintiff, and evidence offered by him tends to support his contention. Defendant testified that the parties merged into a fivesome from the 5th to the 16th hole, and between these said holes the game proceeded "strictly according to honors." This is explained to mean that "the man who makes the lowest score is the man who has the honor of making the first play at the next hole." It does not appear who the "honor" man was at the 16th hole, but it is clear that the plaintiff had the "honor" of having his knee cap broken by a ball driven by the defendant, and it is obvious that thereafter all "honors" ceased. Obviously, a different rule of liability would apply if there was a merger of the two matches, but as there was conflicting evidence upon this point, the entire evidence was properly submitted to the jury.

The second question propounded involves the duty imposed by law upon the owner of a golf course. Manifestly, it is the duty of the owner to exercise ordinary care in promulgating reasonable rules for the protection of persons who rightfully use the course, and furthermore, to

exercise ordinary care in seeing that the rules so promulgated for the protection of players are enforced. The owner of a golf course is not an insurer, nor is such owner liable in damages for mishaps, accidents and misadventures not due to negligence. In the case at bar the evidence tends to show that the owner of the course had promulgated certain rules designed to protect players, and in an effort to see that such rules were enforced it had employed rangers who were charged with the duty of supervising the course and enforcing the rules and regulations prescribed by the owner. There is evidence that the rules so prescribed were openly violated, and that the defendant owner, through its agents and employees, made no effort to caution offending players or otherwise to discharge the duties imposed by law. Therefore, the liability of the owner was properly submitted to the jury, and the judgment based upon the verdict, must be upheld.

No error.