[Crim. No. 4620. Second Dist., Div. One. Aug. 13, 1951.]

THE PEOPLE, Respondent, v. PAUL JERRY DUNCAN, Appellant.

Eugene V. McPherson for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

DORAN, J.—Appellant and one Andrade were charged with robbery. Andrade pleaded guilty. Appellant was adjudged guilty, by the court, a jury having been waived. The appeal is from the judgment.

It is contended on appeal that the evidence is insufficient to support the judgment.

■ Briefly the record reveals that two men armed with revolvers entered the store of Simon Dershowitz. As recited in respondent's brief, Dershowitz testified, ''that at about 3:15 in the afternoon of July 25, 1950 two men came to his store with guns and that his wife, who was in the store with him ran out of the store and that one of the men ran after her and then came back with the gun and hit the witness on the head with the gun. Before the witness was hit, one of the men said to him, 'Money, money, money, money, . . . quick.'; that then the witness was hit in the head with a gun and that he opened the cash register. The witness then lost consciousness and when he recovered his consciousness he found that the bills were gone from his cash register. He testified that the money in the register was in the sum of approximately $70. The witness testified that because of the injury to his head he was required to go to the hospital and that he was treated.

''Mr. Dershowitz testified that one of the men was the defendant Andrade and that it was the other man who hit him on the head. The witness testified that he did not see the defendant Duncan.

''The wife of the preceding witness, Pauline Dershowitz, testified that she was in the liquor store on the afternoon of July 25th and that she saw the men enter the store; that one of the men had a gun in his hand. She testified that one of the men was the defendant Andrade; that Andrade did not have a gun; that Andrade said, 'It is a stickup'. She testified that she ran out of the store and into the drug store next to the liquor store and asked them to call the police. She testified that as she was coming out of the drug store the men were

coming out of the liquor store and entering the car; that the car was parked in front of the drug store and that it was a red car."

The clerk in the drugstore obtained the number of the car. The police were notified and the car traced to the owner Beverly Garcia. "She testified that she knew the defendant Paul Jerry Duncan and that he borrowed her car on the afternoon of July 25 because something had happened to his car. She testified that she agreed to lend the car; that she gave him the key to the car around 1 o'clock in the afternoon; that she next saw the car around 3 or 3:30 and that the car was parked in front of her house."

Officer Killeby testified that in a conversation with appellant, "defendant Duncan stated that he borrowed the car from Beverly Garcia and that he had gone with the other boys, Kinsinger and Andrade and another one known only as Bob, to the liquor store on Eastern Avenue; that the defendant Duncan said that he didn't know they were going to hold up the store; that he said, 'All that I overheard was that they were going over to look it over, but I did not know that they were going to hold the store up.' The police officer then asked the defendant Duncan where he was during the holdup and Duncan said, 'I was across the street when they first started in'; that then Duncan said that he walked across the street and went into the drug store and when all the commotion started he ran out; that he got scared and jumped in the car; that Duncan said, 'I wasn't going to go back to the car with the fellows', but 'When the commotion started I got excited and run and jumped in the car'; that Duncan said they drove away from the place. . . .

"On cross-examination the officer stated that Duncan surrendered himself at the police station; Officer Killeby then was asked if Duncan told him he had received any money from the holdup and the officer testified that the defendant said, 'Well, yes. I did get $10, but that was money that Kinsinger owed to me.' On cross-examination the officer was asked if Duncan had told him that he didn't know they were going to hold up the store and the officer testified, 'He told me that they were going over to case the store, look it over.' "

Two girls testified that they were across the street from the liquor store at the time of the robbery and that defendant was across the street and "kept watching these other two that went into the liquor store and as they started to come out of the liquor store the boy that was across the street ran

into the car and then the two of them that were in the liquor store got into the car and drove away down the street."

It is evident from the foregoing that the evidence for the defense was in sharp conflict with that relied on by the prosecution. It is well settled that in such circumstances the issue thus raised is for the jury or the court to decide. That the evidence is sufficient to support the judgment there can be no question for which reason the judgment must be and is affirmed.

White, P. J., and Drapeau, J., concurred.