[Civ. No. 19691.   Second Dist., Div. One.   Oct. 5, 1953.]

ANN EGER, Appellant, v. MAY DEPARTMENT STORES et al., Respondents.

Morton E. Feiler and Newell & Chester for Appellant.

Eugene S. Ives for Respondents.

SCOTT (Robert H.), J. pro tem.—Plaintiff appeals from an adverse judgment pursuant to verdict. She also states that she appeals from an order denying her motion for a new trial.

As a customer of defendant's department store, at 3 o'clock in the afternoon of March 14, 1950, plaintiff entered the parking area adjoining the Appliance Annex of defendant's Fairfax Avenue and Wilshire Boulevard Store in the city of Los Angeles. In her amended complaint plaintiff alleges that defendant negligently permitted empty whiskey bottles to be placed and to remain in this parking area; that as a direct and proximate consequence of the negligence of defendant in maintaining the parking area and in permitting empty whiskey bottles to be placed and to remain in the parking area plaintiff slipped and fell and sustained personal injury.

On appeal plaintiff asserts that defendant, "negligently maintained the parking area behind the Appliance Annex as a result of which an empty whiskey bottle and other debris accumulated in a place reserved for use of the customers at the store; that the plaintiff slipped and fell on this whiskey bottle and suffered various personal injuries."

She describes the parking area as follows:

"The parking lot is covered with black-top and there are white-washed 4x6 timbers running in a north-south direction with painted white lines marking the spaces for diagonal parking. At the northern tip of each of the 4x6s there is a triangular area bounded by white-washed 4x6s. The base of this triangular area runs parallel to Wilshire Boulevard and the sides of the triangle which are set at approximately 45 degree angles, more or less determine the angle of parking. The painted white lines marking off the parking spaces are approximately parallel to the respective sides of the triangle. The arrangement may be roughly compared to a skeleton of a fish with the 4x6s constituting the back bone and tail and the painted white lines the ribs of the fish."

Plaintiff fell at or near one of these triangular areas. In the triangle, according to testimony at the trial, there were an empty whiskey bottle and bits of paper, dirt and gravel. Plaintiff landed with her feet outside of the triangle and her head and body inside of the triangle. At the trial the following testimony of plaintiff was elicited:

"Q. By Mr. Ives: Now, actually, Mrs. Eger, you never saw the whiskey bottle, or whiskey bottles, yourself, did you? A. No, I didn't.

"Q. And during the last few seconds before the time when you fell, you were looking where you were going, weren't you? A. Yes, I was looking where I was going.

"Q. And when you say 'looking where you were going,' you mean at the ground where you were stepping? A. Well, I, like the average person—you walk along, of course you can't always have you—you would be running into difficulties if you walked along looking on the ground, I imagine. Like any person walking to assure their safety, I walked, and here and there at times you can see the ground as well as what is ahead of you; but I'm sure I wasn't walking just looking on the ground every bit of the way, then I would have run into trouble with the traffic.

"Q. Now, you saw those triangles, didn't you? A. Yes.

"Q. And you knew those triangles were there? A. Yes.

"Q. And when the time came for you to get to those triangles you looked so you could step over them, didn't you? A. Yes.

"Q. And you did step over the triangles, didn't you? A. Yes.

"Q. So that at the time when you stepped over that triangle you were looking at the ground to see exactly where you were stepping? A. Well, I probably took only a second to look at the ground and then, naturally, I lifted my eyes and, of course, a whiskey bottle, or part of it, could have protruded from under that opening. There is an opening under those guards, so it could have been under there and perhaps just a bit of it with the other debris that was lying there extending, which my heel or something caught into—of course I can't tell you how I fell, I only know I fell on something, stepped on something.

"Q. You don't know anything yourself about how you fell, do you? A. Other than that I stepped on something and fell, and that is all I have of a clear recollection of my accident."

Two points are made by plaintiff on appeal. First she declares that the trial court erred in permitting the following question to be asked by defendant's counsel, and the answer given by the witness Shields.

"Q. Now, do you have an opinion on such a self-service lot as you have here at the May Company Department Store, the Wilshire Department Store, as to how often it is reason-

ably necessary in the exercise of common practice to clean that parking lot? . . . A. I would say that once per week would be sufficient with periodic inspections in between to catch any unforeseen accumulation or debris or foreign matter.''

The witness had testified as to his extensive experience and activities relating to parking lots. The answer was developed and expanded on cross-examination of the witness by plaintiff's counsel as follows:

''Q. By MR. NEWELL: Mr. Shields, I believe you stated you thought that a cleaning of this place once a week with periodic inspections in between would be reasonably good care? A. I do.

''Q. And what you mean when you say 'periodic inspection' is, say, like every hour? A. No, I would think twice a day, or even once a day, depending on what they find; I mean, that is all a matter of—I would say around Christmas time it would require more inspections than other times.

''Q. In other words, maybe like the days when they have a lot more people, inspect more often than the days they know they normally don't°have as many? A. I don't know, I am just guessing at that, but that would be from a practical standpoint my answer, yes.''

█ Plaintiff asserts that it was prejudicial error for the trial court to permit the witness to answer the question first above quoted because ''the matter was one within the common experience of ordinary persons.'' It cannot be said, however, that the question and answer were erroneous or that they could have misled the jury. While ordinary persons have experience in the use of parking areas, that does not include knowledge of the operations needed to clean and maintain these areas.

█ ''The opinions of nonexpert witnesses are admitted as a matter of practical necessity when the matters which they have observed are too complex or too subtle to enable them accurately to convey them to court. or jury in any other manner. . . . (citing authorities) . . .

█ ''. . . The ultimate question to be determined in every case in which expert testimony is tendered is whether the case is one outside of the common experience of men so that a person of training and experience by reason of his superior knowledge is better able to reach a conclusion from the facts. . . .

'' 'It must not be supposed that there is any rule of evidence concerning the opinion of witnesses which is peculiar

to fences, highways, bridges or steamboats, or to any other special subjects of investigation. Where the facts concerning their condition cannot be made palpable to the jurors so that their means of forming opinions are practically equal to those of the witnesses, opinions of such witnesses may be received, accompanied by such facts supporting them as they may be able to place intelligently before the jury.' " (*Manney* v. *Housing Authority,* 79 Cal.App.2d 453, 459 to 461 [180 P.2d 69]; see, also, *Burch* v. *Valley Motor Lines, Inc.,* 78 Cal.App. 2d 834 [179 P.2d 47].)

"Section 1870, subdivision 9 of the Code of Civil Procedure specifically grants to a witness the right to express his 'opinion on a question of science, art, or trade when he is skilled therein.' To attach to that section limitations of the nature proposed by the defendants (in the instant case the plaintiff) would be to restrict unduly the province of the opinion evidence, for if that section is to have any degree of efficacy, then of necessity it must be viewed in the light of liberality. It might be said with little fear of contradiction, that rarely, if ever, does an expression of opinion by a so-called expert not amount to that which either the court or jury might adopt as a basis for the ultimate decision in the case. However, that does not mean that the witness is deciding the case or that in so testifying he is usurping the functions of the jury. He is merely giving an opinion based upon his technical training which the court may or may not accept as testimony that 'was proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue.' " (*Wallace* v. *Speier,* 60 Cal.App.2d 387, 394 [140 P.2d 900].)

A critical analysis of plaintiff's evidence as to how the accident happened requires consideration of her testimony above quoted, her surgeon's statement that her injuries were caused by her falling backward with her foot fixed rigidly in position, together with the other evidence that she landed with her feet *outside* of the triangle. She suggests that the jury might reasonably have inferred that she slipped *inside* of the triangle, that her foot slid forward so that her toe came between the asphalt surface and the bottom of one of the 4x6s and was held rigidly in position as she fell. In her closing brief plaintiff suggests that after she had fallen her feet were wrenched loose from underneath the 4x6 and her legs flopped across the 4x6 in a northerly direction at the conclusion of her fall; that she was inside the triangle as she

slipped, even though part of her body was outside the triangle after she fell. While plaintiff was not required to avoid all inconsistencies in evidence which she made available to the jury, it was essential that she produce competent and persuasive evidence, and that by such evidence, and reasonable inferences based thereon, she prove her case by a preponderance of evidence. This she obviously failed to do. The implied finding of the jury that plaintiff's injuries were not due to negligence of defendant cannot be said to be erroneous on the basis of the record before us on appeal.

As the sole remaining point on which plaintiff bases her appeal she directs attention to a question asked of the witness Shields, the objection and ruling thereon and his answer as follows:

"Q. Now, from the investigation that you have made, Mr. Shields, and your knowledge of similar parking lots in this district, will you state whether or not you have an opinion as to whether this particular parking lot in its details as to construction and as to material is or is not consistent with good engineering practice in Southern California?

"Mr. Newell: I will object to that question, your Honor, on the ground that it calls for an opinion of the witness. It has no relevance here. Good engineering practice and what is reasonable safety are two different things. . . .

"The Court: Overruled.

"The Witness: Yes, it is designed in accordance with good engineering practice."

Faulty construction was not an issue raised by the pleadings. Plaintiff had made no claim that the parking area had been improperly laid out, marked and equipped. The answer of the witness that "it is designed in accordance with good engineering practice" would in no way absolve defendant of negligence if plaintiff had shown that defendant was guilty of some negligent act or omission in maintaining it. The question and answer might well have been omitted. It is doubtful whether the jury were impressed by the one question and answer on direct examination of the witness by defense counsel. They had not been told that they must decide whether the parking area was properly constructed. The issue before them was whether defendant had been negligent in maintaining it.

On appeal plaintiff declares that "the question to be decided by the jury was whether or not the parking lot had been constructed in a negligent fashion" and that "the jury might

have found the defendant negligent in the manner in which it placed the 4x6s on the parking lot'' because it had left an air space of 1½ inches between the surface and the bottom of the 4x6s.

These suggestions are not consistent with plaintiff's pleadings or with the theory on which the case was tried. When plaintiff's counsel interposed his objection to the question last above quoted addressed to Mr. Shields, on the ground that it was not relevant, this objection was correct. █ Since the issue of improper construction was not raised by the pleadings and was not before the jury for decision in the trial court, it cannot be presented for the first time on appeal. It is doubtful whether the jury could or would have found that there was any defect in plan or construction if the issue had been before them.

The case of *Blinkinsop* v. *Weber*, 85 Cal.App.2d 276 [193 P.2d 96], and other cases cited by defendant as justification for having asked the question assailed by plaintiff are so readily distinguishable from the case now before us as to require no discussion.

The attempted appeal from the order denying motion for new trial is dismissed. Judgment affirmed.

White, P. J., and Doran, J., concurred.