[Civ. No. 17478. First Dist., Div. One. Feb. 28, 1958.]

ANTHONY J. OAKES, Appellant, v. WILLIAM CHAPMAN, JR., Respondent.

*Assigned by Chairman of Judicial Council.

Sullivan, Roche, Johnson & Farraher for Appellant.

Ropers & Majeski for Respondent.

PETERS, P. J.—Plaintiff was hit in the eye by a golf ball driven by defendant. He sued defendant on the ground of negligence. The jury brought in a verdict for defendant. From the judgment entered on that verdict plaintiff appeals. His contentions are that the trial court committed prejudicial error in sustaining an objection to a question asked of the witness McMurry, and in instructing the jury that if plaintiff knew that defendant was about to hit the ball defendant was under no duty to warn the plaintiff of that fact.

On July 21, 1955, plaintiff and defendant were members of a foursome engaged in a golf game on a municipal course. The plaintiff and his son were placed in that foursome with defendant and another man by the club starter. The group played 15 holes without incident. The 16th hole is a long one—530 yards—with a par 5. Defendant's first shot from the 16th tee landed on the fairway, about 50 yards behind plaintiff's. Plaintiff and his son waited for defendant to take his second shot. They stood about 40 to 45 feet from defendant, standing in back of him as he faced the ball. Respondent is a left-handed golfer. Plaintiff watched defendant at all times, and even made a comment about defendant's choice of a Number 2 wood for his next shot. Defendant took a mighty swing and the ball went off on nearly a 90-degree angle from its intended line of flight and hit the plaintiff in the eye, seriously injuring him and causing the eye to be later removed.

Plaintiff's son was standing beside plaintiff when he was hit. They both testified that they had watched defendant on the preceding 15 holes and had noted nothing unusual about his swing or his play. As far as they knew, the defendant had not hooked the ball on any of his prior shots. They estimated that the ball went off 80 to 95 degrees from the intended line of flight. No one actually saw the ball in flight because it was traveling too fast.

Defendant admitted that he had had infantile paralysis when he was young, but the disease had not impaired his arms or legs. His right arm is not quite as strong as his left. He

can walk on his right leg, but does not have full use of it. He has full use of his left leg. He has the full use of his right hand except for picking up small objects such as pins. He can grasp a golf club with this hand and can follow a stroke right through with his right arm all the way behind him. He had been playing golf for about two years and averages around 90 strokes for 18 holes. He never before had hooked a ball on a 90-degree angle, his worst prior hook shot being off line about 35 degrees. He had never hit anyone before. He did not tell anyone in the foursome that there was anything wrong with his right arm or leg. He swung at the ball very hard and has no idea why it went so badly off course.

Everett McMurry, a golf professional called by plaintiff, testified that the safest place for a person to stand while another person is playing a shot is directly back of the shooter and about 25 to 40 feet away. A shot as here described would be very "unusual," or a "freak" shot. The witness had never seen such a shot in 29 years of playing golf.

Ralph Fry, another professional called by defendant, testified that, while a golf ball seldom goes exactly where the average player desires it to go, in 40 years of playing golf he had never seen such a shot, and, in fact, believed that such a shot would be "impossible" under any conditions. If such a shot happened it would not necessarily be the result of a physical deficiency.

On this evidence the jury brought in a verdict for the defendant, and plaintiff appeals.

Appellant's first contention is that the trial court committed prejudicial error when it sustained an objection to the following question addressed to appellant's expert McMurry: "Add onto the hypothetical question that I previously gave to you of the circumstances of this particular case, add to that the fact that the man who was swinging the golf club at age 18 months had an attack of infantile paralysis and that the residual effect from that attack left one arm weaker than the other, and the right leg weaker than the other, and that in his right hand, he had no feeling of touch, and cannot, for example, pick up pins, and that he does not have full touch in the right hand, has some strength in it, but not the same strength that he has in the left arm, and assume further that that individual strikes the ball which goes a 90 degrees different direction from that which he intended, would you form any opinion as to the cause for the ball going in that direction?"

The trial court sustained respondent's objection to this question, stating: "I believe that the answer to the question propounded would entail the knowledge of matters that are beyond the qualifications of this witness. I think there are medical aspects involved in answering that question, and he hasn't been qualified as a medical man."

Later appellant, in his cross-examination of Mr. Fry, asked a similar question which was, however, allowed by the court. This question was as follows: "Now, assume, for instance, however, the situation where a man has less strength in one arm than he has in the other; assume that he has no sense of touch in his right arm; assume that when he was a child at age eighteen months, he suffered an affliction of an attack of poliomyelitis, which left some residual effect upon him, and that that residual effect affected both his leg and both his arm; assuming further that he is left-handed and that the residual effect is in his right arm and in his right leg; assuming further that he strikes a golf ball in the position in which you were right here, and that the golf ball goes directly behind him a distance of 40 feet and hits a man in the eye, would you not conclude that the direct cause of that abnormal, freak occurrence was the physical deficiencies under which the golfer was playing?"

Mr. Fry replied that he could not answer that question "directly," but that if such a shot occurred it would "not necessarily" be the result of a physical handicap; that "Anyone can hit a ball tremendously off line . . . and he would not have to necessarily be handicapped in any way in order to do so"; that such a shot normally just does not happen, and, in his opinion, it was "impossible for anyone to hit a golf ball at right angles for a distance of 40 feet with any kind of a golf club under any conditions."

In close situations the admissibility of expert testimony is frequently a matter within the discretion of a trial court.

In *Huffman* v. *Lindquist*, 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R.2d 485], the Supreme Court stated the rule as follows: "It is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion in evidence [citing a case], and its ruling will not be disturbed upon appeal unless a manifest abuse of that discretion is shown. [Citing authorities.] The competency of an expert 'is in every case a relative one, i.e., relative to the topic about which the person is asked to make his statement.' (2 Wigmore on Evidence [3d ed.], § 555, p. 634.)"

In *Fall* v. *Coastwise Line*, 116 Cal.App.2d 345 [254 P.2d 58], the trial court sustained an objection to a question asked of a seaman and master of a lumber schooner as to whether a man in plaintiff's condition was physically qualified to perform the duties of an able-bodied seaman. In holding that this was not error the appellate court stated (p. 353) : "The qualifications of a witness to testify as an expert is a matter within the sound discretion of the trial court; and where there is no showing of a clear abuse of that discretion, the ruling will not be disturbed on appeal. (Cases collected—21 West's Cal. Dig. 605, § 546.) No such showing is made. The question merely assumed the present condition of plaintiff's foot and ankle as testified to by some of the medical experts. The witness was not shown to have ever known any seaman, who, after an injury similar to that sustained by plaintiff, was able to go to sea and do actual work. There was no error."

Of course, the discretion conferred upon the trial court in such matters can be abused. Such an abuse was found in *Jones* v. *Johnston Testers, Inc.*, 132 Cal.App.2d 162 [281 P.2d 602]. In that case the basic issue involved the question of how and under what circumstances a pipe cap fell from a hook. An expert—a mechanical and industrial engineer and a safety engineer—who had examined the hook was asked if the mechanism was so worn as to permit opening of the hook without exertion of pressure on the trigger. The effect of the wear and tear on the mechanism was obviously a question for expert testimony. The court held (p. 170) :

" 'It has long been recognized that expert testimony is not only proper but also virtually indispensable in cases where the relation between the facts and results may be understood only by those with special skill or training.' [Citing a case.] That is the situation here. [Citing authorities.]

"The witness had disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury. The purpose of the question was apparent. It is evident from the question itself and from the previous testimony of the witness that his answer would have been favorable to plaintiffs. No offer of proof was necessary. Where a question to which an objection is sustained indicates that the answer to it will be favorable to the party seeking to introduce the testimony and the question is a material one, it is not necessary to make an offer of proof. [Citing two cases.]"

It is well settled that the testimony of an expert is admissible when such expert, because of his profession, or his

peculiar skill and knowledge in some department of science not common to men in general, enables him to draw an inference where men in general would be left in doubt. (10 Cal.Jur. p. 958, § 217; *Wells Truckways, Ltd.* v. *Cebrian*, 122 Cal.App.2d 666 [265 P.2d 557]; *Eger* v. *May Department Stores*, 120 Cal.App.2d 554 [261 P.2d 281]; *Burch* v. *Valley Motor Lines, Inc.*, 78 Cal.App.2d 834 [179 P.2d 47].) The game of golf fits into this classification. It certainly is a game of skill. But this does not mean that the trial court committed error in sustaining the objection. There was no showing that the witness knew what effects, if any, the slight disability here shown to exist would have on the golfer's swing. The witness had testified that in 29 years of golfing he had not seen such a shot. The trial court was justified in concluding that he was not qualified to testify on this type of shot. There was no offer of proof and there is no showing that the witness could have answered the question, or what his answer would have been. Thus the court acted well within its discretion in sustaining the objection.

Even if the ruling were erroneous, the exclusion of this evidence could not have prejudiced appellant. The key issue was whether respondent knew or should have known, because of his physical condition, that there was danger that he might make such a shot so as to impose upon him a duty to warn bystanders. There was a failure of proof on that issue. Everyone concedes that on the first 15 holes defendant played a normal game. The evidence is to the effect that respondent had never before hooked or pulled a ball so badly. Never before had he made such a shot. If the jury had found that such an injury was foreseeable, where would there be one word of evidence to support such a finding? There is not one word of evidence that the residual effect of infantile paralysis in any way had ever affected respondent's game.

 The only other contention made by appellant is that the trial court erred in giving the following instruction: "If you find that the plaintiff knew that the defendant was about to strike the golf ball, there was no duty upon the defendant to make oral or audible warning of his intention to strike the ball because such a warning would have been superfluous."

Appellant urges that telling the jury that, as a matter of law, defendant would not be liable if plaintiff knew defendant was about to hit the ball was error. The instruction was correct. While it is the general rule that whether there is

a duty to warn of an intended golf shot is a question of fact (*Everett* v. *Goodwin*, 201 N.C. 734 [161 S.E. 316] ; *Alexander* v. *Wrenn*, 158 Va. 468 [164 S.E. 715]), it is equally clear that, as a matter of law, a warning is not required to be given to persons who are aware that a potentially dangerous movement is about to be made. In connection with a golf shot this principle was expressed as follows in *Stober* v. *Embry*, 243 Ky. 117 [47 S.W.2d 921, 922] : "No duty to give notice of the intended drive existed for the benefit of the boy who was already aware of the player's purpose to send the ball in his general direction, and who was stationed where he could watch the play. Negligence is the breach of a duty owed to another by reason of the relationship existing or the circumstances presented, and the record contains no evidence tending to show that Embry failed to perform any duty imposed upon him either in omitting any precaution or in committing any act."

In reference to a factual situation similar to the one here involved the court in *Walsh* v. *Machlin*, 128 Conn. 412 [23 A.2d 156, 138 A.L.R. 538] stated : "At the time the defendant made his shot he knew that the plaintiff had walked away as above stated, and that his general position was about thirty-five or forty feet distant on a line at right angles to the intended and anticipated line of flight of the defendant's ball. When the defendant hit his ball there was nobody between it and the green, that is, within the intended line of flight or within the area within which danger from the ball was reasonably to be anticipated, and the plaintiff knew that the shot was then being played or was about to be played. The plaintiff was then in a position where, under all ordinary circumstances, he should have been reasonably safe and not where the defendant should reasonably have anticipated that any injury from the shot would result to him. Under the circumstances the defendant was not under a duty to warn the plaintiff that he was going to strike the ball, for the plaintiff knew it and oral or audible warning would have been superfluous."

These and other cases establish the rule that, in golf, the person about to hit the ball is not required to give a warning to persons who know his intention, nor is he required to warn persons in a position that is not, reasonably, in a state of danger. (*Houston* v. *Escott*, 85 F.Supp. 59 ; *Miller* v. *Rollings* (Fla.), 56 So.2d 137 ; *Trauman* v. *City of New York*, 208 Misc. 252 [143 N.Y.S.2d 467].) Thus the instruction correctly stated the law. The evidence is without conflict

that appellant knew that the defendant was about to hit the ball, and was watching him at all relevant times. The evidence also is without conflict that appellant and respondent both felt that appellant was standing in a place where danger was not to be anticipated. The experts agreed on this issue. Respondent had no reason to believe that appellant was in a place of danger. The shot was purely a "freak" shot. A warning that respondent was about to hit the ball would have been superfluous. Neither party knew, or had reason to believe, that the ball would go 90 degrees off course. Under these circumstances there just was not any evidence of negligence on the part of respondent.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.