[Crim. No. 1506.   Fourth Dist.   May 8, 1959.]

THE PEOPLE, Respondent, v. THOMAS JOSEPH MARSH, Appellant.

Thomas Joseph Marsh, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert M. Sweet, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Appellant was charged with the crime of escape from a state prison, in violation of section 4530 of the Penal Code. Trial by jury resulted in a conviction.

At the trial it was stipulated that the appellant was committed to the California Institution for Men at Chino on September 13, 1955; that on February 12, 1958, while still a prisoner at Chino, he left without permission, traveled to Los Angeles, and was apprehended the next day. In appellant's written statement made five days after his escape, he recited the substance of the foregoing facts regarding his escape and apprehension and added: ''It is a bum beef. I want to go in and cop a plea as soon as possible and get my time in order that I can get back to Quentin and get this over.'' The prosecution's case was completed by the admission in evidence of official records showing that appellant was serving a sentence upon conviction of first degree robbery when he escaped.

The appellant's sole defense was that his escape was not his voluntary act but was caused by a hypnotic suggestion given him by a fellow inmate, one Jack A. Cox. Cox testified that he had obtained his knowledge of hypnosis from books and had hypnotized hundreds of persons, including appellant; that on February 12, 1958, he again hypnotized the appellant and while he was in the trance suggested to him that he ''go back where he . . . was having a good time.'' Cox explained that this hypnotic suggestion was intended only to cause ''age regression'' but evidently appellant interpreted it as a suggestion that he leave prison and return to the area in which he lived prior to his confinement. Cox further testified that he became worried when he was unable to locate appellant within the prison and that he left the prison without permission in order to find appellant and return him to prison; that although he had no actual knowledge of appellant's whereabouts,

he traveled to Wilmington, California, where appellant had previously resided; that he found appellant on Avalon Boulevard and brought him out of a hypnotic trance; and that appellant and Cox then went into a restaurant and were there having coffee when the police arrested them.

On cross-examination Cox admitted making a statement on February 17, 1955, in which he said:

"I left the Institution right after the 7 :00 p.m. count Wednesday, February 12, 1958. I lived Bar. 1 and went out past the dairy. Then over the fences east then back north to Ontario, where I sold my watch, Windsor yellow-gold wrist watch for $7.50. I then got on a bus and rode to L.A. where I changed to Long Beach. I got a hotel room and stayed there Thursday night.

"The next day I was picked up in Long Beach in a cafe drinking a cup of coffee. I wore my own civilian clothes when I left.

"I want to see a Deputy D.A. make a statement and get my time as soon as possible."

Three other prisoners also testified for the defense that they had seen Cox hypnotize various persons, including the appellant.

Testifying on his own behalf appellant said Cox had hypnotized him on 12 to 15 occasions prior to February 12, 1958; that on that date Cox had again hypnotized him and the next thing he remembered was being brought out of a trance by Cox in Wilmington; that Cox explained what had happened and he and Cox then decided to return to prison; and that while returning they stopped for coffee in Long Beach where the police apprehended them. On cross-examination he admitted changing into civilian clothes from his prison garb while absent and that he had read an article about hypnosis in Readers Digest.

A psychiatrist was appointed by the court as an expert at the request of the defense. This expert, a member of the staff at Patton State Hospital, was familiar with the principles of hypnosis and experienced in its use. She testified that while in a hypnotic state a subject can be ordered to move an arm or do other simple acts, and that the subject may or may not remember what he has done during the trance, depending on the depth of the hypnosis; and that no one can be forced, under hypnosis, to perform an act which is contrary to his basic nature. The doctor further testified that a successful hypnotist must have a rather forceful personality; that not all persons

are apt subjects for hypnosis and that the best subjects are suggestable, weak, compliant, peaceful personalities. She testified that from her observation of Mr. Cox's manner while testifying she formed the opinion that Cox did not possess the personality qualities which a successful hypnotist must have and that the appellant did not possess the qualifications of the ideal subject. The doctor also testified that, in her opinion, a suggestion as to age regression such as was said to have been made by Cox to the appellant, would not cause the recipient to escape. A defense request for permission to perform a hypnotic experiment in the courtroom was refused by the court.

In rebuttal the prosecution called a correction officer stationed at Chino, who testified that he talked to the appellant at the city jail in Long Beach in the presence of Cox, and that appellant stated that he and Cox met at the dairy at Chino and left from there together, and that he had "caught a bus to some little town and went to L. A."

On October 10, 1958, appellant sent a letter to this court requesting that an attorney be appointed to represent him on this appeal. This court then made an independent examination of the record and determined that it would be of no value to either the defendant or the court to have counsel appointed. A letter was received from the appointed counsel who had represented the appellant at his trial, stating that counsel had been unable to determine that meritorious grounds for appeal exist. Appellant was notified that his request for appointed counsel was denied and requested to file an opening brief or to make such other showing as he might desire.

In a communication to this court appellant Marsh represented that the psychiatrist appointed by the court was not an expert on hypnosis, was prejudiced against him, and that the testimony given by the witness was untrue.

The effects of hypnosis are not occurrences of such common knowledge and experience that men of ordinary education can form a conclusion concerning them as capably as an expert witness. It is the settled rule that a person can testify as an expert in his field when, because of his profession, or his special knowledge, skill or experience not common to men in general, he is able to form an opinion where men in general would be left in doubt. (*Oakes* v. *Chapman,* 158 Cal. App.2d 78 [322 P.2d 241]; *People* v. *Cole,* 47 Cal.2d 99 [301 P.2d 854, 56 A.L.R.2d 1435].)

As a person familiar with the principles of hypnosis

and experienced in its use, the psychiatrist appointed by the court was correctly permitted to testify about the effects of hypnosis. ██ In reply to appellant's argument that the expert was prejudiced against him and that part of her testimony was false, it must be remembered that it is the general rule that on appeal an appellate court will not weigh the evidence or disturb the finding of the trier of fact if there is substantial evidence in the record to support it. It is not the province of the appellate court to analyze conflicts in the evidence. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].) ██ Furthermore, the appellant called the witness appointed by the court, as an expert on hypnosis. He is estopped to complain of her qualifications, for he invited the error, if any was made. (*Gjurich* v. *Fieg* (1913), 164 Cal. 429 [129 P. 464, Ann.Cas. 1916B 111].)

██ Appellant also contends that the district attorney committed prejudicial misconduct during his closing argument. This contention is not supported by any argument or citation of authority nor do the arguments by counsel appear in the transcript prepared at appellant's request. If such prejudicial remarks were made it was incumbent upon appellant to have them included in the record. (*People* v. *Mike* (1958), 163 Cal. App.2d 466 [329 P.2d 519].)

██ It does not appear that the court was in error in refusing to permit the defense to conduct a demonstration of hypnosis in the courtroom. The admission of such evidence is a matter for the discretion of the trial court. No abuse of discretion here appears. (*People* v. *Sherman*, 97 Cal.App.2d 245 [217 P.2d 715].)

In the instant case the facts constituting the escape were stipulated. Appellant's sole defense was that this escape was performed involuntarily while he was in a hypnotic trance. Without ruling on its validity as negating a conscious or volitional act, a reading of the entire record makes it clear that appellant was given a full and fair opportunity to present such a defense and the jury was properly instructed on it. That the jury disbelieved appellant's contentions is manifest and there is ample evidence to support the verdict.

The attorney general has filed a statement setting forth the evidence and points reviewed, and has reached a similar conclusion.

Judgment affirmed.

Mussell, J., and Shepard, J., concurred.