[Crim. No. 1473. Fourth Dist. June 26, 1961.]

THE PEOPLE, Respondent, v. EUGENE ANDREW
WILLIAMS, Appellant.

Eugene Andrew Williams, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—After a jury trial, defendant was found guilty as charged of the crime of second-degree robbery, a violation of Penal Code, section 211. He was also charged with and admitted four prior felony convictions for robbery and grand theft. He appeals from the judgment of conviction which also finds that he is an habitual criminal under the provisions of Penal Code, section 644, subdivision (b).

During the evening of July 15, 1960, J. W. Eagerton and his wife entered the Spanish Village and went to the bar. While Mr. Eagerton was ordering beer, the defendant walked up to him and looked him over. After paying for the beer, Mr. Eagerton replaced his wallet, which contained about $40, in his front pocket. A short time later, Mr. Eagerton went to the restroom. While he was alone in the restroom, Mr. Eagerton saw defendant enter and moved to one side to make room for him. The defendant placed a hold on Eagerton's neck and pulled him backward. Eagerton lost consciousness and when he regained consciousness he was lying on the floor and his billfold was gone. Eagerton observed no one else in the restroom while these events were occurring. He went back to the bar and told his wife he had been robbed. He then spoke to Mr. Gray, a private patrolman who was working as a bouncer in the café, and they stepped outside the Spanish Village where they saw defendant going up the street about 20 or 25 feet away. Defendant was alone and he had a billfold in his hand and seemed to be taking bills out of it. Gray, who knew defendant and who had seem him leave the Spanish Village a few seconds before Eagerton appeared, called to him. When Gray shouted, the defendant looked back and ran. Eagerton and Gray pursued defendant but were unable to find him. The two men returned to the Spanish Village where they got Mrs. Eagerton and then returned to the area where defendant had disappeared. There they saw him standing near the Coast Hotel. At this time defendant again ran and eluded Gray who pursued him.

Mrs. Granger, a resident of the Coast Hotel where the defendant also resided, testified that about 10 p. m. she observed the defendant running up the street with Gray, the private patrolman, running behind him. Later that night, the defendant telephoned her and asked her if the police had been to the hotel. She said they had been there but in response to a further question added that they had departed. She asked defendant where he was but he hung up without answering. Still later, about 11:30 p. m., defendant came to the hotel and questioned her about the whereabouts of the police officers and whether they had searched his room.

About midnight, Police Officer McLennan observed defendant near the Coast Hotel. The officer approached defendant and questioned him. In response, the defendant stated that his name was Earl Johnson and that he lived at the Coast Hotel. When asked for identification, the defendant said, "I may

as well tell you, my name is Eugene Andrew Williams'' and produced a social security card with that name on it.

The officer asked what had happened down at the Spanish Village and the defendant responded, ''You mean what happened in the restroom?'' Defendant further stated that he had entered the restroom in the Spanish Village and observed a tall man robbing a sailor. He said he followed the tall man when he left, hoping to get money for keeping quiet about what he had seen. However, the man ran from him and he got no money. Defendant was arrested and searched but no money was found on his person.

Officer Humphrey testified that he discussed the case with defendant on July 19, 1960. At that time, defendant said that on the evening of the robbery he had gone to the Spanish Village with a girl named Bertha. During the evening he left his table and entered the restroom. There he saw a tall man fighting with a sailor. He did not wish to become involved so he walked out of the restroom and left the café. A short time later the tall man he had seen in the restroom came out. Defendant called to him, thinking he could get some money for keeping quiet because he thought that this man had robbed the sailor. As he followed this man up the street, the bouncer came out and shouted. Although the defendant thought the bouncer was calling to the other man, he also ran. He did not know why he ran.

Defendant testified at the trial that he went to the Spanish Village on the evening in question with his girl friend, Bertha. Soon after their arrival, he went to the restroom where he observed a man put a strong-arm hold on Mr. Eagerton's neck. Defendant turned and left the restroom and went outside. He did this because he had previously had some difficulties with the police and would be a likely suspect. As he walked down the street, someone ran past him. Defendant called to this person but he kept on running. Defendant heard no one call to him and he did not run up the street. He is a poor runner due to an asthmatic condition and the fact that one leg is shorter than the other. He admitted having the conversation with Officer McLennan and said it was exactly as the officer related it while testifying. He also admitted the conversations with Mrs. Granger that night but denied that he had questioned her about whether the police had been to the hotel. Defendant admitted that after he left the Spanish Village he went to his room at the Coast Hotel and changed his clothes.

Defendant claimed that four days after the robbery he encountered two men in the city jail who told him that they were being held for the same offense on which defendant was being held.

After filing his notice of appeal, defendant asked this court to appoint an attorney to represent him on this appeal. A notice was sent to defendant's trial counsel informing him of defendant's request for court-appointed counsel to represent him on the appeal and inviting his comment as to any possible reversible error in the record. In his reply, defendant's trial counsel stated that he did not believe there were any meritorious grounds for appeal. This court made an independent examination of the record and determined that it would not be of value to the defendant or helpful to the court to have appellate counsel appointed. (*People* v. *Hyde,* 51 Cal.2d 152 [331 P.2d 42] ; *People* v. *Marsh,* 170 Cal.App.2d 284 [338 P.2d 495].) Defendant was notified that his request for counsel had been denied and was requested to file an opening brief or make such other showing as he might desire. Defendant sent several communications to this court in which he urged several claimed errors as grounds for reversal of his conviction.

The first error which appellant contends is grounds for the reversal of his conviction is that the evidence is not sufficient to sustain the verdict of the jury. In consideration of this question on appeal, we are mindful of the following principles: All presumptions in support of the judgment will be sustained and all conflicts in the evidence will be resolved in the manner most favorable to the verdict; also defendant's guilt may be shown by circumstantial as well as direct evidence, and if the jury's verdict is supported by substantial evidence, a reviewing court may not interfere therewith.

Penal Code, section 211, defines robbery as follows: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

In the case of *People* v. *Dodson,* 77 Cal.App.2d 389, 394 [175 P.2d 59], a conviction for robbery was upheld where the evidence showed that the victim had money in his possession before meeting defendants, that he was assaulted by one of the defendants and rendered unconscious, and that the money was missing when he regained consciousness. (See also *People* v. *Hubler,* 102 Cal.App.2d 689 [228 P.2d 37] ; *People* v. *Duncan,* 106 Cal.App.2d 16 [234 P.2d 245].)

In addition to the victim's positive identification of defendant as the person who assaulted him, defendant was seen rifling a wallet shortly after the robbery; when the officer called he fled from the scene of the crime; later he fled when seen a second time; when accosted the third time he gave a false name and material conflicts appeared in his various accounts of what happened. Flight is a factor tending to connect an accused with the commission of an offense and is indicative of guilt. (*People* v. *Spivak*, 166 Cal.App.2d 796 [334 P.2d 44]; *People* v. *Parmenter*, 186 Cal.App.2d 509 [9 Cal. Rptr. 135].) The evidence is more than sufficient to support the verdict of guilty.

Although defendant contends that the prosecution suppressed evidence, he does not specify what evidence was suppressed. No such contention was made during the trial of the case. However, during the trial the defendant made a reference to someone else having been arrested for this crime. Obviously, defendant was aware of these facts before his trial. The defense did not call nor ask that these persons be called as witnesses. He did not even identify them. We must conclude that defendant and his attorney did not desire to call these witnesses on behalf of the defense. Defendant cannot successfully contend that the failure of the prosecution to call these witnesses amounted to the suppression of evidence. It has been consistently held that the prosecution need not call all possible witnesses. (*People* v. *McCrasky*, 149 Cal.App.2d 630, 634-635 [309 P.2d 115]; *People* v. *Salcido*, 186 Cal.App. 2d 684, 688 [9 Cal.Rptr. 57].)

One question not raised by defendant relates to the admission of certain evidence concerning rent that he owed. The prosecution introduced evidence that defendant and his girl friend were behind in their rent. The court ordered all this testimony stricken and the jury was told to disregard it. We must conclude that the jury obeyed the court's instruction to disregard the evidence. (*People* v. *Duncan*, 53 Cal.2d 803, 818 [3 Cal.Rptr. 351, 350 P.2d 103]; *People* v. *Hardy*, 33 Cal.2d 52, 61-62 [198 P.2d 865].) Later, however, it was brought out that defendant was $45.25 behind in his rent. Ordinarily, the fact that the defendant suffered from a lack of money is not admissible in a robbery case. (*People* v. *Kelly*, 132 Cal. 430, 431 [64 P. 563]; Witkin, California Evidence, § 161, p. 182.) In some cases, such evidence has been admitted to show motive where circumstantial evidence is largely relied upon for conviction (*People* v. *Richards*, 74

Cal.App.2d 279 [168 P.2d 435]; *People* v. *Gorgol*, 122 Cal. App.2d 281, 303-304 [265 P.2d 69]); or where there is a showing of sudden unexplained possession of money by a previously impecunious person (*People* v. *Kelly*, *supra*; *People* v. *Orloff*, 65 Cal.App.2d 614, 620 [151 P.2d 288]). Here, the defendant did not have any money in his possession when arrested. Such evidence is admissible only for limited purposes. The evidence of defendant's guilt was primarily direct rather than circumstantial. Had the trial court not stricken the testimony requested, that evidence might well have brought it within the general rule excluding evidence of defendant's financial circumstances. ▮ Even though the trial court might have erred in receiving other evidence of defendant's need of funds, we are convinced that because of the overwhelming weight of the direct evidence no prejudice resulted. (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].)

▮ His counsel at the trial argued that defendant could not be adjudged to be an habitual criminal under Penal Code, section 644, subdivision (b), because the information did not allege that defendant's prior convictions had been upon charges separately brought and tried and that he had served separate prison terms for these convictions, citing *People* v. *Dunlop*, 102 Cal.App.2d 314, 316 [227 P.2d 281]; *People* v. *Keller*, 151 Cal.App.2d 201 [311 P.2d 14].

With regard to prior convictions, the information alleges in substance that: (1) defendant was convicted of second-degree robbery in the city and county of San Francisco on August 26, 1946, and served a term in San Quentin State Prison for the conviction as prisoner number A-4433; (2) defendant was convicted, in the city and county of San Francisco, of two counts of second-degree robbery on September 25, 1951, and served a term of imprisonment therefor in San Quentin State Prison as prisoner number A-19148; and (3) defendant was convicted on April 30, 1957, in San Diego County, of the crime of grand theft and served a term of imprisonment therefor in the Chino State Prison as prisoner number A-19148-A. Defendant admitted the alleged prior convictions.

In addition, during a hearing at the time of sentencing, proof was presented that the defendant had been separately tried and convicted of the prior convictions and that he had served separate prison terms pursuant to these convictions. In its judgment, the trial court found that defendant suffered two prior convictions for robbery and one prior conviction for grand theft upon charges separately brought and tried and

that he had served separate terms in state prison therefor. Defendant was properly adjudged to be an habitual criminal under Penal Code, section 644, subdivision (b).

The information in this case insofar as it alleges prior convictions is precise. It states the jurisdiction in which each prior conviction was rendered, the date of each conviction, the fact that defendant served a prison term pursuant to each separate conviction and describes the charges of which defendant was previously convicted. The information fulfills all the requirements of Penal Code, sections 644 and 969, and the decisions of *People* v. *Dunlop, supra,* 102 Cal.App.2d 314; *People* v. *Keller, supra,* 151 Cal.App.2d 201; and *People* v. *Murray,* 42 Cal.App.2d 209 [108 P.2d 748]. The information need not specifically charge the defendant with being an habitual criminal, since this does not constitute a separate offense. A finding of habitual criminality merely increases the punishment for the present offense. (*People* v. *Dunlop, supra; People* v. *Millwood,* 150 Cal.App.2d 154 [309 P.2d 495].) The allegations of prior convictions contained in the information and defendant's admission of the truth of such allegations were sufficient to support the judgment of habitual criminality.

The attorney general, in his brief, has also reviewed the evidence, considered the law applicable to the facts related and has reached the same conclusion.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 23, 1961.