[Crim. No. 4293.   First Dist., Div. Three.   Aug. 6, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LEROY JOHN KELLERT, Defendant and Appellant.

Antonio J. Gaudio for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., Eric Collins and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Appellant was convicted of burglary (Pen. Code, § 459) and theft (Pen. Code, § 487) and brings this appeal, contending the evidence is insufficient to support his conviction.

The record before us shows that in November 1961 appellant, a parolee and unemployed, was directed by his parole officer to find a job. He obtained work as a dishwasher at the Crystal Springs Golf Club, in San Mateo County, where he had previously been empoyed. Appellant had resigned his earlier employment in September, after receiving $2,300 in settlement of a personal injury claim. In November the proceeds of this settlement appear to have been exhausted. In December appellant borrowed $20 from the owner of the club. Between Christmas and New Year's day appellant tried to purchase a car from a fellow employee, but could not raise the $350 purchase price. At that time he stated he had only $100.

The club maintained a safe on its premises, and when the management was unable to deposit the receipts of the business in a bank they were kept in the safe. The safe could only be opened by use of a combination. At the time of the burglary and theft, receipts from December 27th to and including January 1st had not been banked, but were deposited in the safe. Receipts from various departments of the business, as well as the receipts for different days, were separately totalled on an adding machine, and the adding machine tape was wrapped around bills and checks from each department separately. After the receipts of January 1st had been

segregated and taped there were approximately thirty-one separate rolls and tapes in the safe, representing over $9,000 in cash and checks.

Appellant's last shift terminated shortly after 2 a.m. on January 1st. He had no car, and since the bus station was several miles distant from the club, he was driven to the station by a friend.

The club was open for business on January 1st, but closed at 5 p.m. Before closing, the owners placed the day's receipts in the safe and locked it. At 6 p.m. the janitor inspected the premises and found all doors properly locked and the premises secure. At 6 a.m. the following morning the janitor again made his rounds and found all doors locked as they had been the night before. At 8 a.m. an employee of the club arrived for work, and opened the safe. The money compartment was empty. The employee called the San Mateo County Sheriff's office, which began an investigation.

Appellant returned to his job at noon on January 2d. He was questioned by investigating officers and taken into custody. He denied all connection with the disappearance of the money. He gave a detailed account of his movements from the time he left the club on January 1st at 2 a.m. until his return on January 2d. He stated he had spent the time in San Francisco with his father. He denied possession of any bank account or safe deposit box.

On January 6th, while appellant was in jail, he was visited by his father. Their conversation was monitored by officers, and appellant was heard to tell his father about a safe-deposit box key which he had concealed in his father's room. He instructed his father to get the key and keep it. When appellant's father returned to his room in San Francisco he found officers waiting. The officers obtained the key and with it opened a safe-deposit box at the Wells Fargo Bank in San Rafael. This box had been leased by appellant at about 10 a.m. on January 2d. It contained $5,735 in cash, a receipt for a room at the Holiday Hotel in Reno, and a carbon copy of an airline ticket. From this evidence the officers were able to trace appellant's movements on the evening of January 1st. They found appellant had come to the Oakland airport at around 9:30 p.m. on that day. There he was observed by the ticket sales agent for United Air Lines. This witness stated that appellant appeared to be in an "emotional state." Appellant took flight 360 from Oakland to Reno, departing

shortly after 10 p.m. The stewardess on this flight identified appellant as one of the passengers. In Reno, appellant registered in room 601 at the Holiday Hotel under date of January 1st, and departed the following day. The chambermaid who serviced the room stated that the room was left neat and clean; that the beds had not been slept in, and only one hand towel had been used. She found a large quantity of adding machine tape in the waste basket however.

Appellant was further identified by employees of the bank in San Rafael as the person who rented a safe-deposit box there on January 2d. At that time appellant appeared to have been "up all night."

In explanation of this evidence, appellant testified that he lied to the officers about his movements on January 1st and 2d, because he was a parolee, and as such had no permission to leave the state and go to Reno. He further stated he had made many trips to Reno, and had won large sums of money gambling; that he had several thousand dollars on hand at the time of the burglary and theft here in question; that he kept this money in bills, tucked between the pages of old magazines in his father's room; that he did lease the safe-deposit box in San Rafael and put money there because his father had been given notice and was required to vacate his room. He further testified that he left San Francisco for Reno at 10 a.m. on January 1st; that he remained there until January 2d; that there was a big all-night poker party in his room, at which several men and at least one woman were present, and that he had won $1,500 in the game.

█ In attacking this record on appeal, appellant first argues there is no evidence that a burglary or theft did in fact take place. The evidence clearly refutes this, however. The owners of the club placed their receipts in the safe for security and safekeeping until the money could be transported to a bank. Both safe and building were carefully locked. Since there was no damage to building or safe, it was obvious that the building was entered by means of a key, and the safe by use of the combination. No person had been given permission to enter the premises after the close of business on January 1st. No permission was given to anyone to enter the safe and remove the money. This evidence supports the jury's implied finding that there was a wrongful taking of the contents of the safe.

█ Appellant's next contention assumes that a burglary and theft did in fact take place, but he argues there is no

evidence that he committed the crime. While the evidence heretofore recited fully supports the jury's verdict, there was other evidence also which served to connect appellant with the offense. The record discloses that part of appellant's compensation was board and room at the club. He thus had an opportunity for intimate knowledge of the entire premises and knowledge of the habits of the owners and of fellow employees. He had been requested to and did have duplicate keys made for the janitor, and had opportunity to have keys made for himself. He discussed the safe, and its possible entry, with other employees. Shortly before the burglary and theft appellant was without funds, and immediately after the theft he was in possession of a large sum of money which he attempted to conceal and keep secret.

It has been held that the sudden and unexplained possession of money by one previously impecunious is a relevant and admissible circumstance and may serve to connect that person with a recent theft. (See *People* v. *Kelly*, 132 Cal. 430, 431, 432 [64 P. 563]; *People* v. *Williams*, 193 Cal.App. 2d 394, 400 [14 Cal.Rptr. 279].) From all of the evidence the jury could properly infer, as it undoubtedly did, that in Reno, and in San Rafael where he rented the safe-deposit box, appellant was in possession of stolen money. His explanation of possession of the money was that he had won it gambling in Reno. It is true that this testimony was not directly contradicted by any witness, yet in light of the other evidence in the record the jury could reasonably conclude that appellant's story was purely fictitious. His failure to show possession honestly obtained is thus a strong circumstance tending to support the jury's finding of guilt. (See *People* v. *Citrino*, 46 Cal.2d 284, 288-289 [294 P.2d 32].)

What appellant really asks us to do is to believe his evidence rather than that of the prosecution, and in so doing to set aside the verdict of the jury. Here he misconceives our function as an appellate court. His argument is addressed to the proposition that his guilt has not been established beyond reasonable doubt, forgetting that we are here concerned only with the sufficiency of the evidence to support the conviction, and not with the question of whether guilt has been established beyond reasonable doubt and to a moral certainty. Those questions were resolved by the jury and we do not doubt the sufficiency of the evidence to support the jury's finding.

Moreover, even though we were to regard the evidence here as consistent with the innocence of appellant, which we

do not, the rule stated in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], and cases there cited, would control the disposition of the appeal: ''If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.''

It is clear, however, that the entry and the taking were parts of a continuous course of conduct motivated by the single objective of theft. Thus, as respondent concedes, appellant can be punished only for the greater offense of burglary (*People* v. *McFarland,* 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449]).

Judgment reversed insofar as it imposes a sentence for grand theft, and in all other respects affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied August 21, 1963, and appellant's petition for a hearing by the Supreme Court was denied October 1, 1963.