[Civ. No. 15377. First Dist., Div. Two. July 7, 1953.]

JEAN REAGH et al., Appellants, v. SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Respondent.

Howard Magee, H. William Ott and Charles Reagh for Appellants.

Dion R. Holm, City Attorney, George E. Baglin, Deputy City Attorney, and Irving G. Breyer for Respondent.

DOOLING, J.—Plaintiffs appeal from a judgment for defendant following a jury's verdict.

The minor plaintiff suffered very serious injuries including the loss of his left hand in a spontaneous explosion of chemicals which he had secured in and was carrying from his chemistry classroom in Lowell High School.

The plaintiff at the time of these injuries was a student at Lowell and was just under 16 years of age. He was taking a chemistry course under a teacher named Frances Dealtry and was also enrolled for military training in the R.O.T.C. class in that school.

A day or two before the explosion he had asked Miss Dealtry if she would give him some phosphorus to make a smoke screen during certain maneuvers which the R.O.T.C. class were to engage in over the weekend. Miss Dealtry the day before the explosion gave him a small slice of white phosphorus, which he testified that he told her he could use as a trigger to ignite the red phosphorus, since white phosphorus ignites spontaneously upon exposure to the air. Miss Dealtry at the same time told him that the red phosphorus, which is more inert than the white and will not spontaneously ignite, was in short supply and for that reason she doubted how much of it she could let him have. The minor plaintiff testified, although this part of his testimony was contradicted by Miss Dealtry, that he then asked her in this same conversation if it would be all right to add potassium chlorate and sugar to the red phosphorus to increase the smoke and that Miss Dealtry told him that it would.

The day of the explosion the minor brought a clean glass container to school with him and Miss Dealtry permitted him to take from a locked cabinet a small quantity of red phosphorus, about 100 cubic centimeters, which he placed in the container. Following the class the minor remained in the classroom after the other students had left. Miss Dealtry stood with her back to him in an office adjoining the classroom talking to another chemistry teacher, Mr. Barry. The minor went to an open shelf upon which there were bottles of various chemicals including potassium chlorate and sugar and took a small quantity of sugar, about 35 cubic centimeters, and a smaller quantity of potassium chlorate, about 15 cubic centimeters, and placed them in the container with the red phosphorus. He then said good-bye to Miss Dealtry and left. On his way downstairs the mixture in the container

exploded spontaneously causing the injuries which are the basis of suit.

The appellants urge various claimed errors in the giving and refusal of instructions and in the exclusion of certain evidence. Respondent counters with the contentions that it was established as a matter of law that the minor wrongfully and tortiously took the potassium chlorate, which under the authorities is a defense to the action (*Frace* v. *Long Beach etc. Sch. Dist.*, 58 Cal.App.2d 566 [137 P.2d 60]; *Bradley* v. *Thompson*, 65 Cal.App. 226 [223 P. 572]; *Hale* v. *Pacific Tel. & Tel. Co.*, 42 Cal.App. 55 [183 P. 280]; *Nicolosi* v. *Clark*, 169 Cal. 746 [147 P. 971, L.R.A. 1915F 638]), and that the evidence also shows as a matter of law that the minor was guilty of contributory negligence.

We cannot agree with either contention. ▮ Appellants admitted on the trial that no express permission was given the minor to take the potassium chlorate and sugar, but counted upon the conversation between the minor and his teacher about adding potassium chlorate and sugar to the red phosphorus to show an implied permission. The trial court submitted the question of implied permission or not to the jury as one of fact for them to determine from the evidence. The minor was repeatedly examined and cross-examined on this subject and testimony that he had given on the same subject by deposition was also read into the record. It would serve no useful purpose to detail his entire testimony on the subject. Any contradictions or inconsistencies therein were for the jury to weigh. Sufficient appears from the following testimony to permit the jury to conclude that a reasonable person might draw the conclusion from the conversation that he had permission to take potassium chlorate and sugar to add to the red phosphorus and that the minor in good faith did so believe:

"Well, I asked her if I might have some red phosphorus to use for making a smoke screen for the ROTC field maneuvers on Saturday. She said it would be the thing to use but she couldn't give me a final answer as to how much could be spared until the following day—that would be Friday. So, since it was in rather short supply, as she said, I asked her if it would be a good idea to put potassium chlorate and sugar into it in a slow-burning mixture so that I could stretch the phosphorus and not need as much of it. She said she thought it would be all right. . . . I knew that potassium chlorate and sugar would make smoke, but I wanted to make

sure that it wouldn't—that the red phosphorus wouldn't react with it some way to cut down on smoking properties. So I asked her that, and she said she thought it would not."

The minor testified that while he did not remember the exact words used by either party in this conversation, "I remember quite clearly what I said and what she said." He related the conversation in several ways but the substance of it was in every instance the same. He further testified:

"I understood that I had permission, but not specific permission.

"Q. You mean from what she said you understood that you had permission to take those other articles . . . other than the phosphorus? A. Yes, sir."

■ On the question of contributory negligence the respondent points out that the minor had been making gunpowder and similar explosives for a number of years, and that he had used potassium chlorate with other chemicals for the purpose. However the minor testified that none of the compounds which he had previously made had ever exploded spontaneously, and that he did not know that potassium chlorate mixed with sugar or red phosphorus or both would result in a spontaneous explosion. Miss Dealtry had never instructed the class in the danger of combining potassium chlorate with either of these substances although she knew that such combination might explode. Mr. Barry, although a teacher of chemistry, before this explosion did not know that potassium chlorate mixed with the other chemicals might result in a spontaneous explosion. It cannot be said that the mixing of these chemicals by the minor under the circumstances shown establishes that he was guilty of negligence as a matter of law.

Evidence was introduced by appellants that in certain private schools in the vicinity potassium chlorate was not kept on open shelves in the laboratory classrooms but was always kept in locked cabinets, and by respondent school district that in other high schools under its jurisdiction potassium chlorate was kept on open shelves. ■ Evidence of custom in the same trade or occupation is admissible for the consideration of the jury but it is not conclusive on the question of what constitutes ordinary care. ■ Conformity to "the general practice or custom would not excuse the defendant's failure unless it was consistent with due care." (*Sheward* v. *Virtue*, 20 Cal.2d 410, 414 [126 P.2d 345]; *Polk* v. *City of Los Angeles*, 26 Cal.2d 519, 529 [159 P.2d

931] ; *Neel* v. *Mannings, Inc.*, 19 Cal. 2d 647, 655 [122 P.2d 576] ; *Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E. Co.*, 18 Cal.2d 557, 567 [116 P.2d 611] ; *Mehollin* v. *Ysuchiyama*, 11 Cal.2d 53, 57 [77 P.2d 855].)

The court committed error, under this rule, in giving the jury the following instruction:

"It is the duty of school authorities to use ordinary care to supervise the conduct and activities of pupils at all times while on the school premises during the time the school is open for school purposes and to use reasonable care to protect them from injury at all times when danger to pupils should reasonably be anticipated.

"If you find that the defendant, through its teacher, Frances Dealtry, undertook to instruct the plaintiff Theodore Reagh in a course of study in elementary chemistry, which course involved the use of chemicals which were inherently dangerous and hazardous to a person who was not familiar with their use and their characteristics, and if you further find that the plaintiff was not familiar with their use and characteristics and the dangers incidental thereto, it was the duty of the defendant and of the plaintiff's teacher, Frances Dealtry, to exercise that degree of supervision in connection with the use of said chemicals which you find *was ordinarily furnished* to students of the same age, intelligence and experience, *by other similar schools* which carried on the same type of work in the locality." (Emphasis ours.)

Since there was testimony produced by both parties as to the custom or practice: in certain schools of keeping potassium chlorate locked up (those testified to by appellants' witnesses) and in others of leaving it on open shelves (those testified to by respondent's witness) ; and since the jury was instructed that the degree of supervision "*which you find* was ordinarily furnished . . . *by other similar schools*" fixed the measure of care to be used by Miss Dealtry we cannot know whether or not the jury found that the practice used in other schools under the jurisdiction of the respondent where potassium chlorate was also left on open shelves was the proper standard to be applied. If they did so find appellants clearly suffered prejudice from the erroneous instruction.

Respondent suggests that the instruction dealt with *supervision* not the *storing of chemicals.* We think that this construction of the instruction is narrower than the facts can

justify. Evidence of the practice of other schools in storing potassium chlorate was introduced by both parties. No other instruction dealing in any manner with the practice of other schools was given by the court. We cannot believe that a jury of laymen, however astute in the niceties of language they might be, when they came to consider the evidence with regard to the practice of other schools in the storing of potassium chlorate would not feel themselves bound to follow the only instruction given by the court dealing with the practice followed in other schools.

█ The error is aggravated in this respect by the refusal of the court to give a correct instruction proposed by appellants dealing with the precise question. That proposed instruction read:

"If you find that a person of ordinary prudence, in the position of the defendant, and its officers, teachers and employees, would have kept the supply of potassium chlorate under lock and key, or would otherwise have controlled the same so as to prevent its being used by a student except under the supervision of a teacher, then you are instructed that it was the duty of the defendant to have observed such precautions."

This is a complete answer to respondent's statement in its supplemental brief, quoting *Blanton* v. *Curry*, 20 Cal.2d 793, 804-805 [129 P.2d 1]: "If the defendant desired a further instruction to be given, he should have requested it."

Respondent's suggestion that the jury would not consider the practice used in other schools under respondent's jurisdiction in determining what was done in "other similar schools" does not produce conviction. The jury rather than excluding the practice of such schools from its consideration would be more likely to reach the opposite conclusion, that other *public high schools* were most similar to Lowell which is also a *public high school.*

Much argument is devoted to the claim that the erroneous instruction is patterned on language found in *Brigham Young University* v. *Lillywhite,* 118 F.2d 836. This case was relied upon by appellants in the trial court for the proposition that evidence of the practices followed in similar institutions is admissible for the consideration of the jury (the principle for which it in fact stands) and was also cited by appellants in support of a proposed instruction in which the correct standard was stated: "a person of ordinary prudence in the position of defendant." The case was not pressed on the court by appellants for the proposition, for which it does

not in fact stand, that the practice in other similar schools establishes the standard of care as a matter of law.

 That case in fact announces the correct rule followed in this state and generally in other jurisdictions. The court says of such evidence of custom at page 841 of 118 F.2d:

"It (i.e., evidence of custom) is admissible merely as *some evidence* of the nature of the thing in question because it indicates what is the influence of the thing on the ordinary person in the same situation. *It is not to be taken as fixing a legal standard* for the conduct required by law." (Emphasis ours.)

The court did use this sentence later on the same page: "Therefore, it became the duty of the defendant to furnish instruction and supervision and that degree of supervision is measured in quality by what an ordinary institution of this type would have furnished under the same or similar circumstances."

The whole tenor of the opinion shows that in the use of this sentence the court did not mean to say that what other similar institutions do establishes the standard of care. It had expressly announced the contrary rule in the same opinion. The words "ordinary institution" were used cryptically or carelessly in the sense of "ordinary careful" or "ordinarily prudent" institution.

We can find no waiver by appellants to urge the error in this instruction from their reliance on the Lillywhite case for the correct principle which it actually announces, and no justification in it (even if we were bound by its careless language, which we are not) for the erroneous instruction given by the court.

 Even in the case of California decisions it has frequently been recognized that language from opinions, divorced from its context, may not always safely be given as an instruction to a jury (*Jones* v. *Bayley*, 49 Cal.App.2d 647, 654 [122 P.2d 293] and cases cited.)

 We cannot hold this error to be cured by other general instructions on "ordinary care." The jury was expressly told in this instruction that the standard of care in supervision was measured by "the degree of supervision . . . which you find was ordinarily furnished . . . by other similar schools." The natural conclusion of the jury would be that this was the measure of "ordinary care" in such a situation.

Finally respondent argues that since the jury could have decided the case on other issues not affected by the erroneous instruction, i.e., that the minor was guilty of contributory negligence or a tortious taking we must assume in favor of its verdict that the jury did so, and hence the error must be held without prejudice. Although there seems to be some inconsistency on this question in the California decisions the latest cases in the Supreme Court announce what we are satisfied is the correct rule: That the rule that a judgment will not be reversed on appeal if there is substantial evidence to support the verdict on any theory unaffected by error "is not applicable . . . to a case . . . in which the jury has been precluded by erroneous instructions from considering a valid theory upon which a result different from that actually reached might have been supported. The error in such a case is not cancelled by the fact that the jury might have found for the prevailing party on some other ground." (*Clement* v. *State Reclamation Board*, 35 Cal.2d 628, 643 [220 P.2d 897]; *Edwards* v. *Freeman*, 34 Cal.2d 589, 594 [212 P.2d 883]; *Huebotter* v. *Follett*, 27 Cal.2d 765, 770 [167 P.2d 193]; *Oettinger* v. *Stewart*, 24 Cal.2d 133, 140 [148 P.2d 19, 156 A.L.R. 1221].)

*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493 [225 P.2d 497], is not inconsistent with this rule. There both defendants, wife and husband, the owner and manager of a hotel, were held liable. An erroneous instruction was directed against the wife only as owner. Since the verdict was against both, the court could see that the verdict was not affected by the erroneous instruction against the wife only.

This error necessitates a reversal. Other claimed errors need not be discussed since we have concluded either that standing alone they were not prejudicial or that they are not likely to recur on another trial.

Judgment reversed.

Goodell, J., concurrd.

A petition for a rehearing was denied August 6, 1953, and respondent's petition for a hearing by the Supreme Court was denied September 4, 1953. Shenk, J., Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.