[Civ. No. 30547. Second Dist., Div. One. Dec. 7, 1966.]

GERTRUDE ROSENBERG, Plaintiff and Appellant, v. IRMA F. GOLDSTEIN et al., Defendants and Respondents.

Hecker, Dunford & Kenealy and George L. Hecker for Plaintiff and Appellant.

Kinkle, Rodiger, Graf, Dewberry & Spriggs and Donald H. Dewberry for Defendants and Respondents.

LILLIE, J.—Plaintiff appeals from judgment in defendants' favor entered upon a jury verdict in a personal injury action.

The Eisenberg family resided in a duplex owned by defendants, Irma F. and Sam Goldstein. Around 8 p.m. plaintiff Gertrude Rosenberg and her husband arrived in their automobile to visit the Eisenbergs. "[E]verything was light," the street and porch lights were on and the automobile headlights were burning. Dr. Rosenberg parked at the curb in front of the duplex. Plaintiff alighted from the vehicle; standing by the car she saw Judy, daughter of the Eisenbergs, and said hello, then proceeded to walk across a narrow strip of lawn between the curb and sidewalk toward the duplex. She took two or three steps on the lawn when her foot "went into" a hole in the ground and became wedged under a sprinkler head causing her to fall onto the sidewalk sustaining injury. The strip of lawn was all grass and there was nothing to indicate the hole in the ground; the hole was not visible and was covered with grass. Dr. Rosenberg testified that the hole measured approximately "two and one-half to three inches deep" and was "kind of scooped out" and covered by grass.

On deposition Mrs. Eisenberg said that the sprinkler heads were completely covered with grass which grew two or three inches above them; the area excavated around the sprinkler heads was "just a bed of grass"; the next morning she told Sam Goldstein that plaintiff had tripped over the sprinkler because it was covered with grass, and he told her "that he told the gardener time and again to clear away the grass but evidently he didn't . . . that he had told the gardener to clear away the grass around the sprinkler."

In her deposition, Judith Eisenberg testified that the excavation for the sprinkler head was covered with grass; the hole was deeply imbedded "and grass was in it"; and the grass stood about three inches high over the sprinkler head.

The strip of lawn between the curb and sidewalk had a sprinkler system imbedded in the grass; it had been there in 1945 when defendants acquired the property. The strip was maintained and controlled by defendants and the shut-off valve for the system was on their property. Sam Goldstein testified that there was a "little" clearance below the sprinkler head where the pipe comes out of the ground to allow the system to work—about "half an inch or so"; he never saw the grass extend above the sprinkler head; the flange of the sprinkler head sits on the pipe and is flush with the ground; he had paid the gardener for fertilizer used on the lawn. Irma Goldstein testified that since 1945 the lawn had never been turned over or the grass plowed under; they had never repaired or renovated the sprinkler system and had never bought any sprinkler heads or pipe or extension couplings for the sprinkler system and had made no repairs thereto; a gardener hired by her cared for the lawn "twice a week"; the area had been fertilized; on the lawn grows a tree that has foliage; "many times" she had seen the gardener get down on his hands and knees and trim around the sprinkler heads; the sprinkler heads are flush with the ground, although the grass extends above the sprinkler heads "a little bit"; "there was a little clearance" maybe "three-fourths of an inch or so" below the flange; and the flange holding the sprinkler was about even with the ground.

Appellant urges prejudicial error in the exclusion of certain testimony of her expert witness.

The expert, Charles W. Squires, a licensed contractor of 30 years' experience specializing in the installation, repair and remodeling of sprinkler systems, testified that he is familiar with various kinds of sprinklers and that a sprinkler with a flange on it is properly installed by setting it flush with the lawn or ground so that it does not become a foot hazard. He described "lawn buildup" as—"after a period of years a lawn will have a tendency to build up due to grass cuttings falling on it and fertilizer being put on it and things of that nature will cause it to build up and be higher than it was originally," resulting in a sprinkler head lower than the level of the lawn where it will not function properly. Plaintiff then asked the following hypothetical question: "Q. Well, with respect to the lawn buildup such as you have just mentioned where the lawn builds up above the sprinkler and the flange, are you familiar with the means of correcting this condition? A. Oh, yes, I am familiar with it. Q. What is the method,

sir?'' At this point objection was sustained on the ground that Squires had never seen defendants' sprinklers or lawn. There followed various questions concerning ''the practice of cutting away the earth around a flange'' to all of which the objections that ''it is immaterial'' were sustained. Plaintiff then made her offer of proof wherein she stated that she sought to show by Squires that where lawn buildup has developed over a period of time the only way in which a sprinkler can be adjusted with safety, so that it will properly function (continue to spray water), is to install a nipple on the pipe and elevate the flange so that the flange and sprinkler are level with the lawn; but that instead of doing this, gardeners cut away around the sprinkler, especially where a flange is used, creating a safety hazard because the excavation builds up with grass. Objection to the offer of proof was sustained on the ground that the evidence shows neither the type of sprinklers used by defendants nor ''lawn buildup'' on their lawn.

At the trial objection to the hypothetical question was sustained on the ground that plaintiff's expert witness, Mr. Squires, had seen neither defendants' sprinkler system nor their lawn; the court's ruling was improper. While they made no such objection to the hypothetical question in the court below, defendants now argue that the hypothesis contained therein has no basis in the evidence—there is nothing to show the type of sprinklers used by defendants or that ''lawn buildup'' existed on their lawn; this contention, too, is without merit.

█ Whether defendants exercised ordinary care to keep the strip of lawn in a reasonably safe condition was a question of fact for the jury. Accordingly, the jury was properly instructed concerning the duty of a landlord to a guest or invitee of his tenant (BAJI No. 213-H [*Sexton* v. *Brooks,* 39 Cal.2d 153, 156 [245 P.2d 496]] and BAJI No. 213-I [*Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 232-235 [282 P.2d 69]]). Thus, it was crucial to her case for plaintiff to establish the standard of due care and defendant's failure to comply therewith. █ Experts may give evidence concerning the recognized and accepted operating standards and practices in their profession, trade or business on the issue of whether such standards have been met or violated. (*Fonts* v. *Southern Pac. Co.,* 30 Cal.App. 633, 638-640 [159 P. 215]; *Young* v. *Bates Valve Bag Corp.,* 52 Cal.App.2d 86, 95-96 [125 P.2d 840]; *Wallace* v. *Speier,* 60 Cal.App.2d 387, 392 [140 P.2d 900]; see *Eger* v. *May Department Stores,* 120 Cal.App.

30

2d 554, 559 [261 P.2d 281].) ■ This expert is entitled to give an opinion based upon his technical training which the trier of fact may or may not accept as testimony that " 'was proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue.' " (*Wallace* v. *Speier*, 60 Cal.App.2d 387, 394 [140 P.2d 900].) Plaintiff herein sought to show by her expert that over a period of time, in any flange type sprinkler system imbedded in grass lawn, "lawn buildup" results from grass cuttings and fertilizer raising the level of the lawn leaving the stationary sprinkler head lower than the lawn level and impeding the water spray; that the recognized and accepted standard of maintenance of such a sprinkler system in such a lawn, in the business of lawn sprinkler contracting (installation, repair and remodeling) requires, to correct this condition, the installation of a nipple on the pipe raising the flange to lawn level, which method is relatively safe; that instead of raising the flange, it is common practice among gardeners to cut the grass and earth from around the sprinkler head to furnish the necessary clearance for the water spray, which, when grass grows in and over the excavated portion concealing the same, creates a safety hazard for-foot traffic.

■ Squires, a licensed contractor, had been qualified as an expert in the installation, repair and remodeling of sprinkler systems (Code Civ. Proc., § 1870); defendants interposed no challenge to his qualifications. Thus, as an expert, he was entitled to "give his opinion although he did not personally observe the facts, basing his opinion upon the facts testified to by other witnesses and included in hypothetical questions put to him. ■ If the case is one for expert testimony, this is so not because the expert has witnessed the facts, but because he is qualified by reason of his special knowledge to form an opinion on the facts while the ordinary juror is not. (*Manney* v. *Housing Authority*, 79 Cal.App.2d 453, 459-460 [3] [180 P.2d 69] [hearing denied by the Supreme Court].)" (*Kastner* v. *Los Angeles Metropolitan Transit Authority*, 63 Cal.2d 52, 58 [45 Cal.Rptr. 129, 403 P.2d 385].) ■ Thus it was error to prevent the expert from answering the hypothetical question on the ground that he had seen neither defendants' sprinkler system nor their lawn.

■ As argued by respondents, a hypothetical question to an expert witness must find its basis in fact; but "Considerable latitude must be allowed in the choice of facts as the basis upon which to frame a hypothetical question. ■ Every

hypothesis contained in the question should have some evidence to sustain it. But while this is true, it is also the rule that it is not necessary, in framing the question, to include a statement of all the evidence in the case. ▮ The question may be framed upon any theory of the questioning party which can be deduced from the evidence, and the statement may assume any facts, within the limits of the evidence, upon which the opinion of the expert is desired. . . . It is the privilege of a party in such cases to assume, within the limits of the evidence, any statement of the facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed, subject to the limitation that the question shall not be unfair or misleading." (*Treadwell* v. *Nickel,* 194 Cal. 243, 267 [228 P. 25] ; *Hutter* v. *Hommel,* 213 Cal. 677, 680 [3 P.2d 554].) ▮ Moreover, "A party is entitled to base his hypothetical question on any reasonable inference from the evidence, it being for the jury to decide whether such inference is sound." (*Sullivan* v. *City & County of San Francisco,* 95 Cal.App.2d 745, 762 [214 P.2d 82].) In *Sullivan,* the court held the question to be a proper one because "[T]here was *some* evidence upon which the hypothetical question was based." (Italics added; p. 762.) Here the record does not support the position of respondents that there is no evidence establishing that a condition of "lawn buildup" existed on their lawn or that a "flange" type sprinkler system was used by them.

While the specific term was not used by other witnesses, their description of defendants' lawn reflects the condition referred to by Squires as "lawn buildup" and that it did indeed exist thereon, and that the gardener did in fact cut grass and earth from around the sprinkler heads to furnish clearance for the water spray resulting in spaces—between the ground and sprinkler head and between sprinkler head and the lawn level—which became overgrown with and obscured by grass. At least since 1945 the lawn had never been renovated or turned over or the grass plowed under; it had been cared for "twice a week" by a gardener and had been regularly fertilized and cut. At no time since 1945 had defendants bought any sprinkler heads or any type of extension couplings for the sprinkler system or made any repairs thereto. To permit them to work properly, so that the water would spray out, the gardener excavated around the sprinkler heads; Mrs. Goldstein "many times" observed him on his hands and knees cutting from around the sprinklers. As to the hole causing

plaintiff to fall, according to all of the witnesses, it consisted of a space both above and below the sprinkler head covered with grass. Most of the witnesses testified that the hole was imbedded with and covered with grass and that grass grew above and covered the sprinkler head—there was a "scooped out" clearance surrounding the sprinkler forming a hole about three inches deep (Dr. Rosenberg) ; it was "half an inch or so" from the sprinkler head to the pipe at the bottom of the excavation (Sam Goldstein) ; the space was three-fourths of an inch deep (Irma Goldstein) ; the blades of grass on the lawn were about three inches tall from the ground, there was a hole "deeply imbedded" in the ground, and the sprinklers were covered with grass and visible only "if you got down on hands and knees and looked around for them" (Judith Eisenberg) ; the sprinkler heads were completely covered with grass, the area excavated around the sprinkler was "just a bed of grass" and the grass grew two or three inches above the sprinkler head (Mrs. Eisenberg).

The foregoing also describes a flange type sprinkler system used on defendants' lawn. In addition, both Irma and Sam Goldstein several times described in their testimony the flange on the pipe holding the sprinkler and its location with reference to the sprinkler head to allow the water to spray out properly.

The evidence plaintiff sought to offer by the testimony of her expert witness went to the very heart of her case; its exclusion was error, prejudicial particularly in the light of the instruction on custom and usage[1] given to the jury at the request of defendants. Although it cannot itself establish a legal standard of due care (*Jensen* v. *Southern Pac. Co.*, 129 Cal.App.2d 67, 73-74 [276 P.2d 703] ; *Tucker* v. *Lombardo*, 47 Cal.2d 457, 464 [303 P.2d 1041]) and is "merely to aid the jury in determining from such evidence and all the other evidence in the case whether the particular conduct of a party does nor does not measure up to the legal standard" (*Miller* v. *Midway Fishing Tool Co.*, 106 Cal.App.2d 612, 614 [235 P.2d 630]), evidence as to whether a person conformed to custom or usage that had grown up in a given locality or business is admissible in negligence cases on the issue of what constitutes due care or negligence under the circumstances.

[1](BAJI No. 102-F) "Evidence as to whether or not a person conformed to custom that had grown up in a given locale or business is relevant and ought to be considered, but is not necessarily controlling on the question whether or not he exercised due care, for that question must be determined by the standard of care that I have stated to you."

(*Fowler* v. *Key System Transit Lines,* 37 Cal.2d 65, 68 [230 P.2d 339] ; *Bouse* v. *Madonna Constr. Co.,* 201 Cal.App.2d 26, 27 [19 Cal.Rptr. 823].)

 The evidence to support BAJI No. 102-F (which contains a correct statement of the law [*Bouse* v. *Madonna Constr. Co.,* 201 Cal.App.2d 26, 29 [19 Cal.Rptr. 828]]) is at best very meager. The only evidence of ''custom and usage'' to which respondents are able to point in support of the instruction is the brief testimony of Sam Goldstein that he observed that the clearance around his sprinklers was ''nothing different'' than that in those belonging to the neighbors in the same block. However, the error is not in giving the instruction on custom and usage but in excluding the testimony of plaintiff's witness in that connection. As in her attempt to show the accepted operating practices and standards in the maintenance of flange type sprinklers on the issue of the proper standard of care and whether defendants met the same in maintaining their sprinkler system, plaintiff likewise was frustrated in her effort to develop testimony concerning the practice or custom of cutting ''around the sprinkler head,'' by a series of objections sustained on the ground that ''this is immaterial.''

The relation of the error in the exclusion of Squire's testimony with reference to the issue of due care—to the totality of the situation reflected in the transcript of the trial proceedings warrants a finding of prejudice and a reversal of the judgment. Under the circumstances, we deem it unnecessary to discuss other issues raised by appellant.

The judgment is reversed.

Wood, P. J., and Fourt, J., concurred.